Leroy **HAYNES** et al., Plaintiffs,

v.

**DALLAS COUNTY JUNIOR COLLEGE DISTRICT**, et al., Defendants.

Civ. A. No. 3–3751–A.

United States District Court,
N. D. Texas, Dallas Division.

Dec: 2, 1974.

Ed J. Polk, Sylvia A. Demarest, D. Marcus Ranger, Edward B. Cloutman, III, Dallas Legal Services Project, Dallas, Tex., for plaintiffs Leroy Haynes and Nathaniel Halton.

G. William Baab, Dallas, Tex., for plaintiff Clark Johnson.

H. P. Kucera, Dallas, Tex., for defendants Dallas County Junior College Dist., Board of Trustees of Dallas County Junior College Dist., William J. Priest, Donald T. Rippey, and Donald G. Creamer.

N. Alex Bickley, City Atty., City of Dallas, Thomas B. Thorpe, Joseph G. Werner, Asst. City Attys., City of Dallas, Dallas, Tex., for defendant Frank Dyson, Chief of Police.

Wilson Johnston, Asst. Dist. Atty., Dallas County, Dallas, Tex., for defendant Henry Wade, Dist. Atty.

Crawford C. Martin, Atty. Gen. of Tex., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Robert C. Flowers, Jay Floyd, Asst. Attys. Gen., Austin, Tex., for State of Texas.

MEMORANDUM DECISION

ESTES, District Judge.

In this action plaintiffs seek declaratory relief, injunctive relief, and money damages against defendants because of plaintiffs' suspension from college, which they allege was done in violation of their rights of free speech and due process of law. Having considered the affidavits, depositions, stipulations, and sworn offers of proof filed in this case, the court hereby enters this memorandum decision as findings of fact and conclusions of law.

On March 4, 1970 plaintiffs Leroy Haynes and Clark Johnson, students at El Centro Junior College, were discussing with several other students in the school's lobby the differences which they had with the faculty and administration of the college. More students began congregating, until the crowd had grown to at least 200 students, representing views both in agreement and disagreement with the views of plaintiffs.

Haynes read to the crowd a list of "demands" which had been presented to the administration. It is undisputed that the size of the crowd was such that access to the college bookstore and to the stairways to classrooms was impeded. Several administrators felt threatened by the presence of the noisy and impassioned crowd. Defendant Creamer, the Dean of Students of El Centro, approached the plaintiffs and asked them to stop what they were doing and to help disperse the crowd or to continue the discussion in his office, which could have contained about 50 students. Plaintiffs refused, although Haynes did quiet the crowd so that Creamer could be heard. Shortly after Creamer left the scene, plaintiffs left the campus and the crowd dispersed.

Subsequently, plaintiffs received notice that they were charged with "causing disruptive behavior of El Centro students in the lobby" of the school, and that they would have an opportunity to defend against this charge in a hearing to be held before a disciplinary committee. After the hearing, plaintiffs were notified of the committee's decision that they be suspended, and of their right to appeal. Plaintiffs were given a hearing date, but prior to the date for the administrative review hearing they filed this action against the defendant El Centro officials.

Along with their complaint, plaintiffs filed a motion for a temporary restraining order preventing defendants from implementing the suspensions. When this court denied the motion for a temporary restraining order, plaintiffs filed with the Fifth Circuit an appeal, which was denied without opinion. At that time, and thereafter, defendants asserted that their action in suspending plaintiffs was based on their belief that plaintiffs had violated Article 295a of the Vernon's Ann. Texas Penal Code, which makes it a misdemeanor to engage in disruptive activity upon the campus of a public school. Plaintiffs then amended their complaint to challenge the constitutionality of Article 295a and re-

quested injunctive relief against its enforcement, adding as defendants Dallas Chief of Police Frank Dyson and Dallas County District Attorney Henry Wade. Upon request of plaintiffs, a three-judge court was convened. Contemporaneously with the filing of this decision, the three-judge court was dissolved, and the case remitted to the judge before whom the action was originally filed. (See order following this decision.)

In the final pre-trial order filed in this case, plaintiffs stated that the remaining issues of law are: (1) whether plaintiffs' suspension was in violation of their rights of free speech and due process of law, and (2) whether Article 295a [now recodified as Article 4.30 of the Texas Education Code, V.T.C.A.] is unconstitutional as applied to plaintiffs.

■■ In regard to plaintiffs' allegation that their right of free speech was violated, we start with the well settled proposition "that First Amendment rights are available to both students and teachers in the school environment as well as elsewhere." Vail v. Board of Education, 354 F.Supp. 592, 597 (D.N.H.1973). The Supreme Court emphasized this when it stated that students and teachers "do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines School District, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In Tinker, however, the Court also emphasized "the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." Id. at 507, 89 S.Ct. at 737. When a conflict does arise between the school officials' authority and an attempted exercise of free speech, Tinker requires that the right not be abridged unless there are "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." Id. at 514, 89 S.Ct. at 740. It is the duty of school officials to prevent the occurrence of disturbances, and the

First Amendment does not require them to wait until a disruption has actually occurred before they may act. Karp v. Becken, 477 F.2d 171 (9 Cir. 1973).

■■ There is no evidence in this record of any attempt to deprive plaintiffs of the opportunity freely to express their views, nor that they were punished for having done so. Instead, the evidence shows that defendants acted to break up the congregation in the school lobby because its presence was preventing access to and from the staircases and school bookstore, and because of their genuine fear that the excited crowd might become violent at any moment. The evidence does not support plaintiffs' contentions that they were suspended for expressing their views, but rather shows that their suspensions were for causing the disturbance and refusing to leave the lobby or to adjourn for further discussion in the administrative offices after having been asked to do so by defendant Creamer. "While a school is certainly a market-place for ideas, it is just as certainly not a market place. The educational process is thwarted by the milling, mooing, and haranguing, along with the aggressiveness that often accompanies a constitutionally-protected exchange of ideas on the street corner." Shanley v. Northeast Ind. School District, 462 F.2d 960, 968 (5 Cir. 1972). Under the facts of this case, defendants acted reasonably to prevent a disturbance, and inflicted discipline upon plaintiffs solely as an enforcement of the school policy against disruptions of its activities. In doing so, they did not violate plaintiffs' right of free speech.

■■ Plaintiffs also allege that defendants' denial of their request to be represented by counsel, and the holding of the suspension hearing in the office of the charging party, Dean Creamer, amounted to a deprivation of their right to due process of law. Plaintiffs were given adequate notice of the hearing, which was conducted by Creamer, who did not vote in regard to the disciplinary

committee's decision. The committee was composed of faculty members chosen alphabetically and students chosen by the Student Senate. In the hearing, which lasted approximately five hours plaintiffs were afforded the rights required by the Procedures for Handling Student Discipline Cases as determined by the Board of Trustees of the College: to testify in their own behalf, to present written statements of witnesses, and to review and respond to testimony of those who testified against them. These procedures are in conformity with the requirements as stated in Dixon v. Alabama State Board of Education, 294 F.2d 150 (5 Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). The requisites of procedural due process as outlined in *Dixon* do not include a right to counsel in disciplinary hearings. After reviewing the evidence in this case, it is obvious that the hearing afforded plaintiffs was entirely fair and permissible under *Dixon*, which the Fifth Circuit has even recently refused to extend. Boykins v. Fairfield Board of Education, 492 F.2d 697 (5 Cir. 1974).

■ Finally, plaintiffs attempt to challenge the constitutionality of Article 295a of the Texas Penal Code. Article 295a was not mentioned by any of the school officials, either at the time of the disruption or at the suspension hearing. The statute was first injected into the case by counsel for the school officials, in the Fifth Circuit in response to plaintiffs' attempted appeal of this court's refusal to grant a temporary restraining order allowing plaintiffs to continue attending classes at El Centro. Thereafter, the school officials stated that in their opinion the statute was authority for their suspension of plaintiffs. Article 295a makes it a misdemeanor to engage in certain specific types of disruptive activity on a public school campus, and provides that anyone who violates the statute three times is thereafter ineligible to attend a public school for two years. The statute, being penal in nature, is obviously enforceable only by law enforcement officials, except insofar as school authorities might rely on it by refusing admittance to three-time offenders. In fact, the appropriate law enforcement officials, Dallas Chief of Police Frank Dyson and Dallas County District Attorney Henry Wade, were dismissed as defendants by pretrial order upon the stipulation of plaintiffs.

■ Under the circumstances of this case, it is wholly conjectural that an occasion might arise where plaintiffs would be prosecuted under Article 295a. *See* Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). "The constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance." *Id.* at 110, 89 S.Ct. at 960. In reality, Article 295a is not actually involved in this litigation. Despite their assertions that it supports their actions, the school officials have not applied Article 295a and, indeed, have no authority to do so. School administrators have an inherent authority to take some disciplinary action to prevent disruptions or to punish those who cause them. The true issues in this case are the extent of that inherent authority and the manner in which it must be implemented, neither of which is affected by Article 295a. Accordingly, plaintiffs lack standing to raise the constitutionality of that statute. Golden v. Zwickler, *supra*.

In conclusion, it has been determined that all of plaintiffs' contentions are without merit. Plaintiffs' motions for injunctive relief are hereby denied, and judgment will be entered in favor of defendants.

### ORDER DISSOLVING THREE-JUDGE COURT

Before BROWN, Circuit Judge, and ESTES and TAYLOR, District Judges.

■ A three-judge court was convened in this case pursuant to 28 U.S.C. § 2284. When a three-judge court determines that the cause before it is not one cognizable by a three-judge court, that court can then dissolve itself and remit the case to the single judge to

whom the case was originally assigned. Miller v. Smith, 236 F.Supp. 927 (D.Pa. 1964).

One of the four criteria which will require a three-judge court under 28 U.S.C. § 2281 is that the injunction sought must be one to restrain the action of a state officer. It was the plaintiffs' amended complaint adding as defendants Chief of Police Frank Dyson and District Attorney Henry Wade, and adding the prayer for declaratory and injunctive relief against the enforcement of Article 295a, which was the basis for plaintiffs' request for a three-judge court. Though plaintiffs still challenge the constitutionality of the statute, Dyson and Wade are no longer defendants. The parties stipulated that the Dallas Police never had any intention or made any threats to enforce the statute against any of the plaintiffs or the class they allegedly represented. (The class action claim was later dismissed). The statute of limitations has long since run for any acts involved here. Vernon's Ann.Tex.Code Crim.Proc.Ann. art. 12.-02 (1974).

Plaintiffs maintain that the officials of El Centro should be considered to be state officers for the purposes of this issue. They cite Gilmore v. James, 274 F.Supp. 75 (N.D.Tex.1967), for the proposition that El Centro trustees are state officials when enforcing a state law. In *Gilmore,* however, the trustees were enforcing a state civil statute requiring state-supported schools to obtain loyalty oaths from the schools' employees. In the present case, the statute challenged is a part of the Penal Code, which can be enforced only by law enforcement officers. The defendant El Centro officials are clearly not state officers who could take any action in regard to Article 295a.

Since we find that this suit is in reality not one to restrain the actions of state officers, and that the challenge to the constitutionality of Article 295a is insubstantial, as plaintiffs lack standing, it is appropriate that the three-judge court be dissolved and that the issues be decided by the district judge to whom the cause was originally assigned. See Trombetta v. Florida, 353 F.Supp. 575 (M.D.Fla.1973). In order to avoid the possibility of duplicated appeals [*see* Goldblatt v. City of Dallas, 279 F.Supp. 106 (N.D.Tex.1968), appeal dismissed, 391 U.S. 360, 88 S.Ct. 1666, 20 L.Ed.2d 646 (1968), aff'd, 414 F.2d 774, 775 n. 3 (5 Cir. 1968)], all three Judges join in the order dissolving the three-judge court and also in the single District Judge's Memorandum Decision on the merits.