**LOUISVILLE & NASHVILLE RAIL-ROAD COMPANY et al.**

v.

**LOUISIANA TAX COMMISSION et al.**

Civ. A. No. 80–145–A.

United States District Court,
M. D. Louisiana.

Aug. 29, 1980.

M. Truman Woodward, Jr., Hilton S. Bell, Joseph W. Looney, David M. Culpepper, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for plaintiffs.

Carmack M. Blackmon, Chief, Civ. Div., Asst. Atty. Gen., State of Louisiana, Baton Rouge, La., for defendants.

## MEMORANDUM OPINION

JOHN V. PARKER, Chief Judge.

This action, brought by eleven interstate railroad companies, all of which are subject to regulation by the U.S. Interstate Commerce Commission, attacks Louisiana's assessment of their property for ad valorem tax purposes. Defendants are the Louisiana Tax Commission, which appraised the property and will shortly make the tax assessments, the individual members of that Commission and the Governor of Louisiana.

Plaintiffs seek declaratory relief under the authority of 28 U.S.C. § 2201 and injunctive relief under 28 U.S.C. § 2202. Jurisdiction in federal court is asserted under the Commerce and Supremacy Clauses of the Constitution, as well as under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337 (Act of Congress regulating commerce), 28 U.S.C. § 1343 (civil rights), and 49 U.S.C.A. § 11503 (congressional limitation of state taxes on railroad property). This Court has jurisdiction under the latter statute because it specifically confers jurisdiction upon district courts in controversies such as this without regard to the amount in controversy or citizenship of the parties. 49 U.S.C.A. § 11503(c). Thus, it is unnecessary to examine the other alleged bases for federal jurisdiction.

Defendants have answered and plaintiffs have filed a motion for summary judgment under Rule 56, Fed.R.Civ.P. The matter has been submitted to the Court for decision upon a joint statement of facts, briefs which have been filed by the parties, and oral argument heard August 22, 1980.

### Facts

The facts, as stipulated between the parties, are that each of the plaintiffs is a common carrier by railroad subject to the jurisdiction of the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.*, and each of them is engaged in interstate transportation of freight by rail within Louisiana. Each of the plaintiffs owns or leases rights of way, track, equipment, rolling stock and other railroad operating properties within Louisiana which are subject to parish and local ad valorem property taxes. Louisiana, at this time, does not levy a state ad valorem tax. Plaintiffs' rail transportation properties, except land, are presently being assessed in Louisiana at 25 percent of fair market value. The Louisiana Tax Commission is in the process of appraising and will assess other commercial and industrial property in Louisiana for 1980 and subsequent tax years at 15 percent of fair market value except land, which will be assessed at 10 percent. The property owned

by the plaintiff railroad companies within Louisiana constitutes "rail transportation property" within the meaning of the Railroad Revitalization and Regulatory Reform Act, 49 U.S.C.A. § 11503 (sometimes referred to as the "4R Act"). Finally, the parties agree that Section 306 of the 4R Act (49 U.S.C.A. § 11503) was enacted by the Congress pursuant to its power to regulate commerce among the states.

In substance, Louisiana will assess and tax rail transportation property at a ratio of 25 percent of its fair market value while it will assess and tax other commercial and industrial property in Louisiana at a ratio of 15 percent of fair market value. Land will be assessed and taxed at 10 percent of fair market value.

The plaintiff railroad companies claim that Section 306 of the 4R Act prohibits Louisiana from taxing the railroad transportation property at a ratio any greater than that of other commercial and industrial property in Louisiana.

### Legislative Background

The federal statute relied upon by plaintiffs was adopted by the Congress for the specific purpose of prohibiting discrimination against rail transportation property in the levy and collection of state and local property taxes. Section 306, which became effective on February 4, 1979, declares that certain acts unreasonably burden and discriminate against interstate commerce and specifically prohibits a state or political subdivision from doing any of them. Among the prohibitions are that the state may not assess rail transportation property at a value that has a higher ratio to the true market value than the ratio utilized in assessing other commercial and industrial property in the same assessment jurisdiction.[1]

In 1979, the Louisiana Legislature proposed and the people of that state ratified an amendment to Article VII, Section 18 of the Louisiana Constitution, effective November 30, 1979. Under the Louisiana Constitution, property is classified and different rates or ratios of fair market value are assigned to those classifications for ad valorem tax purposes. Land is to be taxed at 10 percent of fair market value; improvements for residential purposes at 10 percent; electrical cooperative properties, excluding land, at 15 percent; public service properties, excluding land, at 25 percent; and other property at 15 percent. This constitutional provision is the nub of the problem before us.

The Louisiana Constitution, as amended, provides that the Legislature may define "electrical cooperative properties and public service properties."

Under the Louisiana statutes, LSA–R.S. 47:1851(M), railroad transportation property, such as that owned and operated by the plaintiffs, is classified as "public service properties" and is therefore to be assessed at a ratio of 25 percent of fair market value.

Louisiana has seventy Assessors, seven in the Parish of Orleans and one in each of the other sixty–three parishes (see Article VII, Section 24, Louisiana Constitution of 1974). Under Article VII, Section 18, of the Louisiana Constitution, these seventy Assessors appraise and assess all property within their respective parishes, except public service properties. Public service properties are appraised and assessed by defendant, the Louisiana Tax Commission, which on or before September 1st of each year must allocate the assessed valuation among the various local taxing units (see LSA–R.S. 47:1855). As indicated above, the Tax Commission has appraised the rail transportation property of plaintiffs and by September 1, 1980, will assess that property utilizing a ratio of 25 percent of fair market value and will allocate those assessments to the various parishes.

---

1. 49 U.S.C.A. § 11503(b)(1). This section has been referred to as Section 306 of the 4R Act (Pub.L.No.94–210, codified at 49 U.S.C.A. § 26[c] and subsequently revised by the Revised Interstate Commerce Act, Pub.L.No.95–473). The statute is found in United States Code Annotated, as indicated above, and it will be referred to in this opinion as "Section 306."

## Discussion

Plaintiffs claim that the assessments about to be levied by the Tax Commission are in direct conflict with the provisions of Section 306, that any state provisions of law authorizing such assessments are invalid because of the Supremacy Clause of the Constitution and that defendants must be enjoined from making such assessments.

Defendants concede that Section 306 imposes a limitation upon state taxation of rail transportation property (although it does not prohibit such taxation) and further concede that the federal law grants district courts authority to issue injunctions against the enforcement of state tax laws despite the contrary provisions of the anti-injunction statute (28 U.S.C. § 1341). Defendants do not attack the validity or constitutionality or even the applicability of Section 306. We assume no such attack is made by the defendants because of the well established authority of the Congress under the Commerce Clause, as well as the long-established history of the Supremacy Clause of the U. S. Constitution. These issues were thoroughly explored in *State of Tennessee v. Louisville & Nashville Railroad Company*, 478 F.Supp. 199 (M.D.Tenn.1979), where all constitutional attack upon Section 306 was rejected. In many respects this case is similar to *Alabama Great Southern Railroad Company v. Eagerton*, 472 F.Supp. 60 (N.D. Ala.1979), where the defendants conceded the applicability of the federal statute but argued for a delay in implementation.

Here, the defendants raise these issues:

■ First, they argue that there is no justification for injunctive relief. This is predicated upon their construction of subsection (c) of Section 306. The statute forbids the states from assessing rail transportation property at any greater ratio than that applying to other commercial and industrial property but subsection (c) relative to injunctive relief provides that an injunction against the state authorities may issue only "if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property."

The defendants argue that commercial and industrial property generally in Louisiana is valued on a reproduction cost basis (LSA–R.S. 47:1957), while rail transportation property is appraised by the combined methods of market approach, cost approach and income approach (LSA–R.S. 47:1853).[2] Defendants then argue that the reproduction cost appraisal method yields a higher "fair market value" that the combined approach utilized by the Tax Commission in assessing the property of plaintiffs. They then infer that a 25 percent ratio of the "low" market value of plaintiffs' railroad properties compared to a 15 percent ratio of the "high" market value of other commercial and industrial property will not produce a 5 percent differential, and therefore the Court may not issue an injunction under subsection (c) of Section 306.

The Court is not impressed with that argument. The federal statute is quite clear. It leaves to the states the appraisal method or methods to be utilized in determining "fair market value" or "true market value." It simply provides that after fair market value has been determined the states may not discriminate against rail transportation property and if the discrimination exceeds the 5 percent prohibition, then the district courts may grant injunctive relief. Here, Louisiana proposes to assess rail transportation property at 25 percent of fair market value while it proposes to assess other commercial and industrial property at 15 percent of fair market value. The 5 percent ratio is exceeded no matter how one calculates it.

■ Next, the defendants argue that rail transportation property is not really being discriminated against here. This argument is predicated upon the affidavit of Mr. Raymond T. Watson, which has been filed in the record. Mr. Watson is a long time employee of the Tax Commission and is

---

**2.** Plaintiffs dispute that commercial and industrial property is valued on a reproduction cost basis. The view which we take of this matter negates the need to resolve this issue, however.

fully familiar with appraisal methods and procedures of that Commission. He states simply that some 231 companies in Louisiana own and operate rail equipment of one sort or another and that these companies are not in the railroad business. They are private companies such as Allied Chemical Corporation, Exxon Corporation and some 230 others which own and operate rail equipment for their own purposes and not as common carriers. He declares that the rolling stock and other equipment of those companies is assessed at 25 percent of its true market value just as the rail transportation property of these common carrier plaintiffs.

Thus, the defendants argue that the railroads are on a parity with these 231 companies and are not being discriminated against. The implication is that, despite being classed as "public services properties," the property of these 231 companies is really other commercial and industrial property and that the railroads thus have no complaint.

The argument does not reach the issue before the Court and overlooks the stipulation of facts. The defendants have admitted that the rail transportation property of these plaintiffs is going to be taxed at a rate of 25 percent of its fair market value while other commercial and industrial property (apparently excluding the property of these 231 companies) will be taxed at the rate of 15 percent. Section 306, with particularity, expressly prohibits the states from levying or collecting taxes upon rail transportation property in that fashion, and it is no answer to say that the state may also be discriminating against the other 231 companies.

■ Finally, the state argues that the remedy in this case should be carefully fashioned. The defendants point out, and correctly so, that no provision of the Louisiana Constitution requires that rail transportation property be taxed at a greater ratio than other commercial and industrial property. Indeed, Section 18 of Article 7 simply provides that "public services properties" will be taxed at 25 percent while "other

property" will be taxed at 15 percent. Defendants argue that it is the Legislature not the Constitution which runs afoul of the federal law. The argument runs that since the Legislature is authorized to define "public service properties," only the statute defining rail transportation property as "public service properties" (LSA–R.S. 47:1851) should be declared invalid. The argument is that this Court should strike down the classification of the rail transportation property as "public services properties" and should declare it to be "other property" taxable at the rate of 15 percent. Then, defendants point out that, under state law, the Tax Commission cannot appraise or assess the property of plaintiffs unless it is "public service properties" because Section 18(D) of Article VII provides that local Assessors will appraise and assess all other property. Then, argue the defendants, since the Court has reclassified the property it may no longer be assessed by the Tax Commission because the Tax Commission has authority only to determine the fair market value of "public service properties" and the Court should not require the Tax Commission to violate state laws which are not in themselves repugnant to the federal law. Defendants, of course, argue that the constitutional provision delegating the appraisal and assessment duties among various state agencies does not offend the federal law and thus the remedy here should be limited to a declaration that those provisions of Part III of Chapter 2 of Title 47 of the Louisiana Revised Statutes defining the property of railroad companies as "public service properties" are null and void.

In brief, the defendants assert that absent a finding of unconstitutionality, federal courts lack the requisite authority to direct a state official to violate state law. The only authority cited for that proposition is *Costello v. Wainwright*, 397 F.Supp. 20 (M.D.Fla.1975); affirmed 525 F.2d 1239 (5th Cir. 1976); vacated en banc 539 F.2d 547 (5th Cir. 1976); reversed 430 U.S. 325, 97 S.Ct. 1191, 51 L.Ed.2d 372 (1977); reinstated 553 F.2d 506 (5th Cir. 1977).

That case does not support the proposition stated. It simply involved a construction of 28 U.S.C. § 2281 (since repealed) which related to the requirement of a three-judge federal district court where the constitutionality of state laws was called into question and the issue was whether one judge could take the action which the district court had taken. The Supreme Court held that it was well within the authority of a single district judge to issue the injunction there contested.

This Court will not require the Tax Commission or the other defendants to do anything; it will simply enjoin them from assessing the rail transportation property here involved at a ratio of fair market value in excess of that utilized in assessing other commercial and industrial property in Louisiana. That ratio has been stipulated to be 15 percent. Accordingly, the defendants will be enjoined from assessing plaintiffs' property at any percentage of fair market value in excess of 15 percent. This Court does not hold that the classification of the rail transportation property as "public service property" is invalid; I simply hold that, whatever its classification, the tax rate may not exceed that which is applied to other commercial and industrial property.

■ It will be recalled that injunctive relief is authorized under Section 306 only if the ratio of fair market value utilized for rail transportation property exceeds by at least 5 percent the ratio used for other commercial and industrial property. Defendants infer that Section 306(c) thus limits injunctive relief to the 5 percent differential which they argue should result in a maximum rate of taxation for rail transportation property of 20 percent. This is calculated as: all other commercial and industrial property, 15 percent, plus 5 percent differential, equals 20 percent.[3]

The defendants argue that they may be enjoined only from assessing the plaintiffs' property at a greater ratio than the 5 percent variation specified in Section 306(c) and thus the property may be lawfully assessed at 20 percent of its fair market value. Defendants misread the statute. It provides, in pertinent part:

"Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. . . ." (49 U.S.C.A. § 11503[c])

Defendants overlook the provisions of subsection (b) of the Act which unequivocally provide that a state may not assess rail transportation property at a value that has a higher ratio to the true market value than the ratio used in assessing other commercial and industrial property. The 5 percent differential was included simply because the Congress was not concerned with insignificant variations that might develop in state assessment practices and therefore authorized injunctive relief only where the differential actually exists. That provision, however, does not restrict in any way the reach of the relief. The statute prohibits all discrimination. The 5 percent variance is simply a threshold authorization for injunctive relief. When the state crosses that threshold, however, the statute authorizes complete injunctive relief and, in this case, it will be granted. The defendants will be enjoined from using an assessment ratio upon plaintiffs' property which exceeds the ratio used in assessing other commercial and industrial property in Louisiana, and that rate, according to the stipulated facts, is 15 percent. The defendants will, accordingly, be enjoined from exceeding a 15 percent ratio.

---

**3.** Plaintiffs argue that the permissible variation under Section 306 is three-quarters of one percent. This calculated as 25 percent divided by 15 percent equals 166 percent; .05 percent times 15 percent equals .0075. Plaintiffs cite legislative history which seems to support their position. The view which the Court takes of this matter, however, makes it unnecessary to agree or disagree with the calculations of either side.

For the foregoing reasons, the motion for summary judgment filed on behalf of plaintiffs is hereby GRANTED. Counsel for plaintiffs will prepare a formal judgment in accordance with this opinion and submit it to the Court, after first submitting it to counsel for defendants for approval as to form.